**Harry Wayne EASLEY, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 82–0182–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Jan. 25, 1983.

Thomas C. Capps, Liberty, Mo., for plaintiff.

Frederic Griffin, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER

BARTLETT, District Judge.

Plaintiff commenced this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final decision of the Secretary of Health and Human Services denying disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

Plaintiff filed his application for disability benefits on May 9, 1980, alleging disability commencing May 22, 1976. Plaintiff filed a prior application for disability on December 20, 1976, which was denied on August 31, 1977, by an Administrative Law Judge (ALJ). The Appeals Council denied review and it was appealed to this Court. The Secretary's decision was affirmed by the Hon. Russell G. Clark on July 13, 1978. Plaintiff did not appeal that decision and the ALJ who considered this application for disability benefits determined not to reopen the prior application. That decision is not reviewable under § 205(g) of the Act, 42 U.S.C. § 405(g). *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Therefore, the period of disability under consideration in this case is after August 31, 1977.

At plaintiff's request, a hearing was held on July 9, 1981, at which both plaintiff and his wife testified. Plaintiff was represented by counsel. The ALJ subsequently denied plaintiff's claim and the Appeals Council refused to grant plaintiff's request for review of that decision. The action is before the Court on cross-motions for summary judgment. Upon consideration of the briefs of the parties, and for the reasons stated below, the motion of the defendant is

granted and the motion of the plaintiff is denied.

The initial burden to establish the existence of a disability as defined by 42 U.S.C. § 423(d)(1) is on the claimant. This statute defines disability as follows:

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

■ The standard of judicial review for this Court is whether the decision of the Secretary was supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Curtner v. Califano,* 584 F.2d 1389, 1390–91 (8th Cir.1978); *Hancock v. Secretary of Dep't of H.E.W.,* 603 F.2d 739, 740 (8th Cir.1979); *Alexander v. Weinberger,* 536 F.2d 779, 784 (8th Cir.1976). Substantial evidence is gleaned from the record as a whole, considering the evidence in support of and that in opposition to the Secretary's decision.

In order to sustain the Secretary's decision there must exist substantial evidence appearing on the record as a whole. This standard of review is more than a search for the existence of substantial evidence supporting the Secretary's findings. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 484–85 [71 S.Ct. 456, 462–63, 95 L.Ed. 456] ... (1951). As Justice Frankfurter made clear "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 488 [71 S.Ct. at 464] .... (footnote omitted).

*Brand v. Secretary of Dep't of H.E.W.,* 623 F.2d 523, 527 (8th Cir.1980).

The burden of proof rests upon plaintiff to establish that he is entitled to benefits under the Social Security Act. *Weber v. Harris,* 640 F.2d 176, 177 (8th Cir.1981); *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir.1975).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled or not. The Eighth Circuit Court of Appeals summarized this evaluation process in *McCoy v. Schweiker,* 683 F.2d 1138 (1982).

In an attempt to create an orderly and uniform framework for analysis and decision of disability claims, the Guidelines set out a fixed sequence of decision-making that Administrative Law Judges (ALJs) are required to follow. First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALJ's findings as to RFC, age, education and work experience fit any of the combinations of those criteria contained in the

Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table....

*McCoy,* 683 F.2d at 1141–42.

Applying the framework of analysis set out in *McCoy,* the ALJ determined that the claimant was engaged in "minimal work activity as a self-employed small engine repairman ... even though his actual net earnings from this work presently are not at a substantial gainful level." (Tr. 8.)

The ALJ did not directly specify whether he found plaintiff to be suffering from a severe impairment. He stated in his opinion:

Claimant has minimal hypertrophic changes affecting the joints of the hands and fingers without significantly affecting his grip strength, manual dexterity or his ability to perform basic work-related activities.

The claimant, in the past, has experienced a low back strain and may have a chronic low back strain tendency; however, this impairment does not significantly affect claimant's ability to perform his current activities as a small engine repairman or other work activities not requiring more than the lifting of 20–25 pounds on a frequent basis and up to 50 pounds occasionally.

The claimant has no significant restriction on his ability to walk, stand, or sit, bend, stoop, crawl, or climb.

\*    \*    \*    \*    \*    \*

The claimant has no other significant impairment.

The claimant maintains the capacity to perform other "light" or "medium" work activities as those terms are defined in the *Dictionary of Occupational Titles.*

Even if the claimant [sic] were limited to lifting no more than 10 pounds (which he testified he could lift) the claimant could perform "sedentary" work activity.

(T. 8–9.)

Following these findings, the ALJ determined that the claimant was not disabled since "he can perform his usual work activity at a substantial gainful level." (Tr. 9.) The ALJ then added this alternate finding:

[Claimant is 46 years of age which under the regulations is defined as a "younger" individual.]

. . . .

Even if the claimant could not perform his usual work activity at a substantial gainful level, when considering the claimant's age, education, past vocational background, (for purposes of this Finding, it is considered unskilled with no transferrable skills), Vocational Rules 203.25 (medium) or 202.17 (light) or 201.18 (sedentary) indicate that the claimant is not disabled....

(Tr. 7, 9.)

The plaintiff contends that he has established that he suffers from arthritis and osteoarthritis and that the pain he suffers prevents him from engaging in any substantial gainful activity. Plaintiff testified about his pain and was supported by the opinion of Dr. John M. Williams who is presently treating plaintiff.

Plaintiff was referred to Dr. Williams by Dr. Andrew Rhodes, a neurosurgeon. From the records in the transcript, it appears plaintiff was treated by Dr. Rhodes from July 1977 to March 1980. Dr. Rhodes at first had believed plaintiff suffered from a herniated disc at L5, S1 (Tr. 273–74), but an electromyogram of the lumbosacral, paraspinals and right lower extremity proved to be normal and there was no evidence of denervation at a root, plexus or peripheral nerve level. (Tr. 279.) On March 19, 1980, Dr. Rhodes reported:

The patient has developed some problems with lumps forming on his wrists and hand bone.... On examination the patient does have some thickening of the joints of the fingers and of the wrist bone. There is tenderness in the calf musculature and knees with no fever or redness. This patient has not had any recent cough or other lung episodes, has had no kidney disorders, his gait has not changed, he has no joint problems with support on his limbs. *Comment:* I think

that this patient is developing some arthritis in the hands and wrists as well as at the knee. Family history is significant, but the patient should be followed up after an evaluation by a family physician.... (Tr. 270.)

When Dr. Williams saw plaintiff in April, 1980 with complaints of hand swelling, stiffness and multiple joint pains, he stated that plaintiff had "moderately limited walking, standing, lifting and carrying." (Tr. 280.) In a letter to plaintiff's attorney, Dr. Williams asserted that he had gone over the hospital forms and treatment and diagnoses of the various doctors sent to him, but "I have yet to see one of the physicians take into consideration this man's pain." Dr. Williams also notes, "This is a subjective report." (Tr. 283.) On November 17, 1980, Dr. Williams answered a medical questionnaire stating that plaintiff's range of motion (ROM) for affected joints was "less than 50%." He also reported that his grip strength was diminished on the right and left and that he "walked with halting gait." (Tr. 285.) On July 6, 1981, Dr. Williams reported that he was still treating plaintiff with no improvement in his condition and minimal improvement on the prescribed medication. Dr. Williams concluded that plaintiff was "totally and permanently disabled from gainful employment." (Tr. 289.)

The ALJ evaluated Dr. Williams' reports as follows:

With regard to the claimant's current medical status, the persuasive medical evidence indicates that the claimant has no significant impairment of any kind. Although claimant's treating physician, Dr. Williams (a general practitioner), has consistently rendered the opinion that the claimant is "disabled," he has provided no detailed diagnostic tests, x-rays, or other studies to support his opinion. It is obvious he believes the claimant and he is basing his opinion upon this belief. Contrary to the opinion of Dr. Williams are the opinions of multiple specialists in the area of the claimant's complaints, some of whom have treated the claimant as treating physicians. Most favorable to the claimant is a report from Dr. Charles R. Kelly, a specialist in rehabilitative medicine (physiatrist) [sic]. Dr. Kelly performed a complete examination [December 12, 1980 at Spelman Memorial Hospital] on the claimant with regard to his joints and back. It was his impression that the claimant had degenerative arthritis (Dr. Kelly did not take x-rays) with only minimal range of motion changes in a number of areas including the cervical spine, wrist, and minimal evidence of clinical impairment. He stated that the claimant's probable chronic strain of the low back was secondary to avoidance of a full range of motion and disuse. He found no evidence of neurological pathology. With regard to the claimant's hands, he stated there were minimal hypertrophic changes (Herbenden's nodes) but the range of motion to the fingers was normal and the grip strength was normal. On examination of the low back, straight leg raising was negative bilaterally and Patrick's test was normal. Posture of the lumbar spine was normal and range of motion of the low back was only slightly limited in flexion. The only muscular abnormalities noted were due to muscle tightness. Strength in his lower extremities was normal. His reflexes were all normal and symmetrical. No spasms, tremor, rigidity, or spasticity was noted. Sensation was normal.

An earlier report from Dr. Slentz [W.A. Slentz, M.D., an internist] in July 1980, indicates claimant was noted to have some degenerative changes at L5–S1 level, but he found that "his symptoms were far out of proportion to the findings." Dr. Slentz was of the impression that claimant, though not capable of manual labor, could certainly do one of may [sic] different tasks involving less strenuous activities. Dr. Slentz also noted excellent grip strength in both hands and he stated that the enlarged joints were non-tender and "not very impressive." He noted perfectly normal back motion. On labo-

ratory testing, there was no indication of a systemic arthritic disease.

(Tr. 10.)

Dr. Slentz's diagnosis was: "1. Low back syndrome. 2. Osteoarthritis, mild. 3. Questionable motivation." (Tr. 282.)

As the ALJ noted, the opinion of a treating physician is, under ordinary circumstances, entitled to greater weight than a non-treating physician. However, as Dr. Williams admitted, his report is a subjective one and is not supported by diagnostic tests and studies. The ALJ stated:

[Dr. Williams' opinions] fly directly in the face of the opinions of multiple specialists (some who have treated the claimant) in the areas of the claimant's complaints, none of whom could find any severe impairment affecting the claimant's spine or joints. Due to these specialists' superior expertise and the detailed nature of their reports, the undersigned must conclude that Dr. Williams' report is based on his belief in the complaints which the claimant has related to him and not an verifiable medical findings. [sic] The undersigned does not share this belief and it is not supported by the other doctors or [sic] record including other treating specialists.

(Tr. 11.)

For example, on November 17, 1980, Dr. Williams indicated that plaintiff's range of motion for affected joints was less than 50 per cent, his grip strength was diminished, and he walked with a halting gait. (Tr. 285.) Dr. Rhodes in March, 1980, indicated that plaintiff's gait had not changed and he had no joint problems with support on his limbs. (Tr. 270.) Dr. Slentz, who examined plaintiff in July, 1980, stated, "All extremities show an excellent range of motion and ... [b]oth hands have an excellent grip." (Tr. 282.) Further, Dr. Kelly who examined plaintiff on December 12, 1980, stated:

Cervical range of motion reveals rotation to the left to be normal. Flexion extension is normal. Rotation to the right has approximately 10 degree loss. Glenohumeral, elbow, and wrist range of motion are normal. The wrists lack approxi-

mately 20 degrees of full flexion and full extension. The metacarpal phalangeal, proximal interphalangeal ranges of motion are normal....

(Tr. 287.)

The ALJ must weigh the medical evidence and resolve any conflicts between medical opinions.

Conflicts in the evidence are to be resolved by the Secretary, not the courts.... Moreover, medical opinions on the ultimate issue of disability are not binding on the Secretary. While the fact that plaintiff suffers from a painful, obstructive lung disease is not in dispute, the ultimate question of whether this condition is so severe as to be disabling is for the Secretary to determine....

"Medical reports * * * unsupported by any medically acceptable clinical or laboratory diagnostic data or findings, may be properly discounted by the trier of fact." ... "[T]he administrative law judge may give whatever weight he deems warranted to a physician's statements which are devoid of specific and complete clinical evidence."

*Janka v. Secretary of H.E.W.,* 589 F.2d 365, 369 (8th Cir.1978) (citations omitted). *See also Russell v. Secretary of H.E.W.,* 402 F.Supp. 613, 620 (E.D.Mo.1975), *aff'd,* 540 F.2d 353, 356 (8th Cir.1976).

An administrative law judge is also required to "give serious consideration to a claimant's subjective evidence of disabling pain even when it is not corroborated by objective findings." *Andrews v. Schweiker,* 680 F.2d 559, 561 (8th Cir.1982); *Brand v. Secretary of the Dep't of H.E.W.,* 623 F.2d 523, 526 (8th Cir.1980). The ALJ must decide in the first instance whether to believe the claimant and must make an explicit credibility finding. *Andrews,* 680 F.2d at 561; *Northcutt v. Califano,* 581 F.2d 164 (8th Cir.1978).

Although pain is a subjective complaint, it need not be fully corroborated by objective examinations and tests. *Brand,* 623 F.2d at 525; *Northcutt,* 581 F.2d at 166. Pain may be disabling, but it is not necessarily so.

Pain, of course, may render a person disabled within the meaning of the Social Security Act.... But not all pain is disabling.... In the ... hearing the administrative law judge was able to evaluate the motivation and credibility of plaintiff's subjective complaints to determine the extent of her pain.... Dr. Posts' opinions, which were not supported by the results of objective tests, may be given whatever weight the administrative law judge warrants. (citations omitted).

*Roark v. Secretary of H.E.W.,* 433 F.Supp. 643, 646 (E.D.Mo.) *aff'd,* 564 F.2d 14 (8th Cir.1977). *See also Brand,* 623 F.2d at 525; *Northcutt,* 581 F.2d at 166; *Benson v. Matthews,* 554 F.2d 860, 863 (8th Cir.1977).

In this instance the ALJ made the following comments about plaintiff's credibility:

The claimant's complaint of severe pain affecting his hands, low back and neck are exaggerations and are not supported by the credible evidence of record.

....

The undersigned believes the claimant has manufactured or exaggerated his multiple symptoms in the hopes of accomplishing compensation through the Social Security disability insurance benefit program. He has told a variety of doctors he has crushed vertebrae in the lower back area and also in the neck when actually the record reflect [sic] the claimant has never had a broken vertebrae. He related in testimony to the undersigned that he only made $50.00–$100.00 a month out of his self-employment when his income tax return reflects that he made almost $300.00 per month in the year 1980, the most recent year prior to the hearing before the undersigned. Finally the reports of the Board-certified specialists have not indicated the existence of a significant disabling impairment in this claimant.

(Tr. 11.)

The Eighth Circuit has indicated that there are certain factors which may be considered in judging the credibility of a claimant's testimony. "[C]laimant's subjec-

tive complaints may be shown to be exaggerated by any inconsistency in claimant's testimony and all other circumstances in the case." *Brand,* 623 F.2d at 526, n. 3. A claimant's demeanor may be considered, *Ballowe v. Harris,* 650 F.2d 130, 133, n. 2 (8th Cir.1981), his description of daily activities, *Dunlap v. Harris,* 649 F.2d 637, 641 (8th Cir.1981), *Reiland v. Harris,* 645 F.2d 11, 13 (8th Cir.1981), frequency and type of medical treatment and medication, *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981), and a claimant's lack of candor, *Fitzsimmons v. Matthews,* 647 F.2d 862, 863 (8th Cir.1981).

This Court finds that the ALJ had a reasonable basis for discounting the credibility of the plaintiff's subjective complaints and that his opinion explicitly states his reasons for not believing the plaintiff's testimony. The ALJ properly considered all evidence favorable and unfavorable to plaintiff. It is the province of the Secretary to resolve all conflicts in the medical evidence and also to weigh the credibility of witnesses. The ALJ's opinion that the plaintiff could engage in his usual work activity at a substantial gainful level or that under Vocational Rules 203.25 (medium) or 202.17 (light) or 201.18 (sedentary), 20 C.F.R. Part 404, Subpart P, Appendix 2 (1982) a finding of not disabled was warranted, is supported by substantial evidence.

Therefore, the plaintiff's motion for summary judgment is denied and the motion of the defendant for summary judgment is granted.

IT IS SO ORDERED.